## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **JAMIE BURT and MITCHELL BURT, each individually and as Parents and Natural Guardians of R.B., a minor** <br> N5430 APT. A <br> County Highway 8 <br> Mondovi, Wisconsin 54755 | * <br><br> * <br><br> * <br><br> * | **FILE NO.:** |
| Plaintiffs, | * | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | * | |
| **WINONA HEALTH** <br> Serve on Registered Agent Office <br> 855 Mankato Avenue <br> Winona, Minnesota 55987 | * <br><br> * <br><br> * | |
| **WINONA HEALTH SERVICES** <br> Serve on Registered Agent Office <br> 855 Mankato Avenue <br> Winona, Minnesota 55987 | * <br><br> * <br><br> * | |
| **WINONA HEALTH'S WOMEN'S HEALTH CENTER** <br> Serve on Registered Agent Office <br> 859 Mankato Avenue <br> Winona, Minnesota 55987 | * <br><br> * <br><br> * | |
| **TROY J. SHELTON, M.D.** <br> 855 Mankato Avenue <br> Winona, Minnesota 55987 | * | |
| **GRACE RASMUSSEN, R.N.** <br> 855 Mankato Avenue <br> Winona, Minnesota 55987 | | |

Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*   \*   \* \* \* \* \* \* \* \* \* \* \* \* \*
\*

COME NOW the Plaintiffs, Jamie Burt and Mitchell Burt, each individually and as

Parents and Natural Guardians of R.B., a minor, by and through their attorneys, Wilbur

Fluegel, The Fluegel Law Office, Sharon R. Morgan, and Janet, Jenner & Suggs, L.L.C., and do hereby allege the following:

## INTRODUCTION

This is a complex medical malpractice action arising from negligent health care provided to Jamie Burt and her unborn daughter, R.B., during her labor and delivery admission from May 23, 2012 through and including May 24, 2012, for the permanent injuries proximately caused by the Defendants' failure to comply with the applicable standards of care that is followed by other healthcare providers, physicians, nurses, clinicians, and hospitals acting under the same or similar circumstances. This case involves the failure to properly manage Ms. Burt's labor and the delivery of her daughter; the failure to recognize and/or perform timely and meaningful interventions in the presence of a deteriorating fetal heart rate and fetal intolerance to labor; and the failure to perform timely and appropriate interventions to deliver the minor Plaintiff, R.B., before such time as she sustained severe and permanent brain injury and its sequellae, including but not limited to cerebral palsy, seizures, motor impairment and cognitive deficits.

## PARTIES

1.      Plaintiff, R.B., is a citizen of the State of Wisconsin, residing at: N5430 Apt. A, County Highway 8, Mondavi, Wisconsin 54755. Plaintiff R.B.is a minor child and brings her cause of action by and through her parents and natural guardians, Plaintiffs Jamie Burt and Mitchell Burt.

2.      Plaintiffs, Jamie Burt and Mitchell Burt, are the parents and natural guardians of their daughter, R.B., and they are both citizens of the State of Wisconsin,

residing with their daughter at: N5430 Apt. A, County Highway 8, Mondavi, Wisconsin 54755.

3.     Defendant, Winona Health, is a nonprofit corporation organized under the laws of Minnesota. At all times material herein, Winona Health was a corporation engaged in the business of owning and operating a hospital, providing health care services in general, and specializing in obstetrical care in particular, acting directly, and by and through its employees, servants, and actual and/or apparent agents, including, but not limited to, Troy J. Shelton, M.D., and Grace Rasmussen, R.N. and/or the physicians, residents, and labor and delivery nursing staff at Winona Health Services caring for Ms. Burt and R.B. during the pregnancy and labor and delivery from May 23 through May 24, 2012, all of whom Winona Health held out to the public as being competent, careful, and experienced in the care of pregnant women and newborn patients. Winona Health maintained offices and places of business in the County of Winona, in the State of Minnesota. Defendant Winona Health may be served at its Registered Office Address, 855 Mankato Avenue, Winona, Minnesota 55987.

4.     Defendant, Winona Health Services, is a nonprofit corporation organized under the laws of Minnesota. At all times material herein, Winona Health Services was a hospital engaged in the business of providing health care services in general, and specializing in obstetrical care in particular, acting directly, and by and through its employees, servants, and actual and/or apparent agents, including, but not limited to, Troy J. Shelton, M.D., and Grace Rasmussen, R.N. and/or the physicians, residents, and labor and delivery nursing staff at Winona Health Services caring for Ms. Burt and R.B. during the pregnancy and labor and delivery from May 23 through May 24, 2012, all of whom

Winona Health Services held out to the public as being competent, careful, and experienced in the care of pregnant women and newborn patients. Winona Health Services maintained offices and places of business in the County of Winona, in the State of Minnesota. Defendant Winona Health Services may be served at its Registered Office Address, 855 Mankato Avenue, Winona, Minnesota 55987.

5. Defendant, Winona Health's Women's Health Center, is a nonprofit corporation organized under the laws of Minnesota. At all times material herein, Winona Women's Health Center was a medical practice/and or medical clinic engaged in the business of providing health care services in general, and specializing in obstetrical care in particular, acting directly, and by and through its employees, servants, and actual and/or apparent agents, including, but not limited to, Troy J. Shelton, M.D., and/or the physicians, caring for Ms. Burt and R.B. during the pregnancy and labor and delivery from May 23 through May 24, 2012, all of whom Winona Women's Health Center held out to the public as being competent, careful, and experienced in the care of pregnant women and newborn patients. Winona Women's Health Center maintained offices and places of business in the County of Winona, in the State of Minnesota. Defendant Winona Women's Health Center may be served at its Registered Office Address, 859 Mankato Avenue, Winona, Minnesota 55987.

6. At all material times herein, Defendant Troy J. Shelton, M.D. (hereinafter referred to as "Dr. Shelton") was a duly licensed physician by the State of Minnesota, authorized to practice obstetrics and gynecology, who worked individually and as an employee, servant, and actual and/or apparent agent of Defendants Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center, and was practicing within the scope of

his employment, and was engaged in the practice of medicine in the County of Winona, in the State of Minnesota. Defendant Dr. Shelton may be served at his primary place of business, 859 Mankato Avenue, Winona, Minnesota 55987.

7.    At all material times, Defendant Grace Rasmussen, R.N. (hereinafter "Nurse Rasmussen"),  was a duly licensed registered nurse by the State of Minnesota, authorized to practice nursing in general, and particularly in the field of labor and delivery and perinatal nursing, and working individually and as an actual and/or apparent agent, servant and/or employee of Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center, and was working and practicing within the scope of her actual and/or apparent agency, service and/or employment, and was engaged in the practice of nursing in the in the County of Winona, in the State of Minnesota. Defendant Grace Rasmussen, R.N. may be served at be served at her primary place of business, 859 Mankato Avenue, Winona, Minnesota 55987.

## JURISDICTION AND VENUE

8.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiffs are residents and citizens of the State of Wisconsin. Defendants Winona Health, Winona Health Services, Winona Health's Women's Health Center, Dr. Shelton, and Nurse Rasmussen are Minnesota corporations and/or citizens with their principal place of business in the State of Minnesota. Therefore, the parties are diverse in citizenship.

9.    This Court has personal jurisdiction over Defendants pursuant to M.S.A. § 543.19, in that, at all relevant times described herein, Defendants: (a) transacted business in the State of Minnesota; and/or (b) committed acts in Minnesota causing injury.

10.     Plaintiffs' claim for relief exceeds $75,000, exclusive of interest and costs, therefore satisfying the amount in controversy requirement of 28 U.S.C. § 1332(a).

## GENERAL ALLEGATIONS AND AGENCY

11.     At all material times herein, a healthcare provider/patient relationship existed between Defendants Winona Health, Winona Health Services, Winona Health's Women's Health Center, Dr. Shelton, and Nurse Rasmussen, and Plaintiff Jamie Burt and her daughter, R.B., the minor Plaintiff.

12.     At all material times herein, Defendants Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center, in connection with its healthcare business activities, employed the services of physicians, nurses, and other professional employees, including, but not limited to, Dr. Shelton, Nurse Rasmussen, and other physicians, and nursing staff at Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center, and held them out and warranted them to the public as competent, careful, and experienced in the medical and/or nursing care and treatment of obstetrical and newborn patients.

13.     At all material times herein, Defendants Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center was supervising and providing care, directly and vicariously through its employees, servants and/or actual and/or apparent agents, including Dr. Shelton, Nurse Rasmussen, and the physicians, and/or labor and delivery nursing staff at Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center, all of whom were acting within the scope of their actual and/or apparent agency, service and/or employment.

14.     At all material times herein, Defendants Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center had a duty to adopt, promulgate, and enforce policies and protocols and to provide training and continuing education to physicians, nurse practitioners, nurses, and other healthcare providers who were employed and/or given privileges to practice and provide care to patients in the fields of obstetrics and neonatology.

15.     At all material times Dr. Shelton was acting individually and/or as the actual and/or apparent agent, servant and or employee of each of the Defendants Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center and was acting within the scope of his actual and/or apparent agency, service and/or employment.

16.     At all material times Nurse Rasmussen was acting individually and/or as the actual and/or apparent agent, servant and or employee of each of the Defendants Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center and was acting within the scope of her actual and/or apparent agency, service and/or employment.

17.     At all material times each of the Defendants were acting directly, individually and/or as the actual and/or apparent agents, servants and/or employees of each other.

## STATEMENT OF FACTS

18.     Plaintiffs incorporate herein by reference here to the statements and/or allegations contained in paragraphs 1 through 17, as though fully set forth herein.

19.     Jamie Burt (hereinafter referred to as "Ms. Burt") was admitted to Winona Health Services on May 23, 2012, at approximately 0705 for induction of labor for her first child. She was 39 3/7 weeks pregnant. She had a prenatal history of elevated blood pressure

and gestational diabetes. Her prenatal physician suspected a large baby. Upon admission, the external fetal monitor showed a reassuring fetal heart rate pattern, with a normal baseline (110 to 160s), good variability, accelerations and no decelerations, all indicative of a neurologically intact and healthy baby.

20.     Ms. Burt's cervix was not dilated and she was not having contractions. Cytotec was administered at around 0920 to ripen the cervix and/or induce labor.

21.     By about 1430 Ms. Burt was having contractions however there was no change to her cervix and a second dose of Cytotec was administered.

22.     Throughout the afternoon of May 23, 2012, the fetal monitor showed a concerning pattern of repetitive fetal heart rate decelerations with maternal contractions, a sign that the baby was not tolerating labor even in the earliest stages.

23.     By about 1715 the fetal heart rate continued to decelerate with maternal contractions, and no interventions were noted in the records.

24.     At around 1900 Pitocin was administered at 2mu/dl in an attempt to bolster uterine contractions, and effectuate a vaginal delivery. The Pitocin was incrementally increased over the next couple of hours.

25.     At about 2115, with the Pitocin infusing at 5mu, the fetal heart rate decelerated into the 90s, and there was an obvious decrease in the variability of the baby's heart rate. Nurse Rasmussen page Dr. Shelton, who ultimately was informed of the concerns about fourteen minutes later. He ordered the continual increase of the Pitocin. He did not come to evaluate his patient until about 2214.

26.     By about 2259 Ms. Burt's blood pressure was elevated at 180/108, and the Pitocin was infusing at 9mu.

27.     At about 2329 an epidural was administered for pain control. Over the next couple of hours the fetal heart rate pattern continued to exhibit concerning signs of fetal intolerance to labor.

28.     At about 0110 nurse Rasmussen discontinued the Pitocin and administered oxygen to Ms. Burt. Her exam revealed that Ms. Burt's cervix was only 1 cm dilated.

29.     At about 0150 Nurse Rasmussen notified Dr. Shelton of the continuing fetal heart rate decelerations and the cervical dilation. Dr. Shelton did not come in to evaluate his patient, and instead told Nurse Rasmussen to keep the Pitocin off and if contractions became too frequent Terbutaline (a medication for reducing or causing contractions to stop) could be administered.

30.     Throughout the early morning hours the fetal heart rate tracing continued to show repetitive decelerations with contractions, some into the 80s, and minimal variability, both concerning signs of fetal intolerance to labor.

31.     Nurse Rasmussen continued to observe the concerning fetal monitor tracing until she finally paged Dr. Shelton at around 0630.

32.     At about 0732 Dr. Shelton ruptured the membranes and thick meconium was present. No significant change in cervical dilation was noted. The fetal monitor continued to show decelerations, minimal to absent variability, no accelerations and a baseline in the 160s, all signs of fetal intolerance to labor and warning signs of hypoxia.

33.     Finally at about 0925 Dr. Shelton ordered a cesarean delivery. However, the baby was not delivered for another hour.

34.     At 1026 R.B. was delivered in a severely depressed state and required extensive neonatal resuscitation. Her Apgar scores were 3, 5, and 6 at one, five and ten

minutes respectively. Thick meconium was suctioned from below her vocal cords. Shortly after birth she was transferred to Gunderson Hospital where she was treated for hypoxic-ischemic encephalopathy, seizures, metabolic acidosis, and meconium aspiration.

35.    R.B. suffered a severe and permanent brain injury due to hypoxia and ischemia during the labor and delivery period. Today, R.B.suffers from the sequellae of that brain injury, including, but not limited to cerebral palsy, seizures, physical and motor disabilities, development delays, cognitive impairments, language deficits, and other permanent injuries.

36.    The risks and dangers to R.B. were obvious and should have been recognized by the physicians, residents, labor and delivery nurses, including, but not limited to Dr. Shelton, and Grace Rasmussen, R.N., and they all knew or should have known that the failure to implement timely and meaningful interventions, and/or to expedite the delivery would expose R.B.to serious and obvious risks, complications and adverse conditions, capable of leading to brain damage, or even death.

37.    The foregoing joint, several, concurrent, individual, and combined negligent acts and/or omissions, as more particularly set forth below, directly and proximately caused R.B.to develop and be exposed to severe and prolonged hypoxia, ischemia, acidosis, and asphyxia, and to also suffer encephalopathy, seizures, severe and permanent physical, developmental, neurological, and cognitive, injuries, and other damages.

### COUNT I – MEDICAL NEGLIGENCE AS TO WINONA HEALTH, WINONA HEALTH SERVICES AND WINONA HEALTH'S WOMEN'S HELATH CENTER

38.     Plaintiffs incorporate herein by reference hereto the allegations contained in paragraphs 1 through 37, as though fully set forth herein.

39.     The Defendants Winona Health, Winona Health Services, and Winona Health's Women's Health Center, directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to: Dr. Shelton, and Nurse Rasmussen, and/or the physicians, and labor and delivery nursing staff at Winona Health, Winona Health Services, and Winona Health's Women's Health Center owed a non-delegable duty to Ms. Burt and R.B., to provide proper care and treatment and to use that degree of skill and diligence required by medical professionals, nursing professionals, hospitals, and medical corporations generally under the same or similar circumstances in the same or similar community.

40.     The Defendants, Winona Health, Winona Health Services, and Winona Health's Women's Health Center directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Shelton, Nurse Rasmussen, and/or the physicians, and labor and delivery nursing staff caring for Ms. Burt and R.B., failed to exercise such degree of skill and diligence required of healthcare providers acting under the same or similar circumstances in the same or similar community, and were negligent in the following particulars, among others, as may be further determined and established through legal discovery in this action:

   a.   Failing to timely come to Ms. Burt's bedside upon learning of a non-reassuring fetal heart rate tracing;

   b.   Failing to recognize a non-reassuring fetal heart rate tracing;

   c.   Failing to recognize signs of fetal stress, and fetal intolerance to labor;

d.   Failing to get an obstetrician to Ms. Burt's bedside in the presence of non-reassuring fetal monitor tracings;

e.   Failing to timely notify and effectively communicate with the attending obstetrician and/or other physicians concerning obvious non-reassuring signs of fetal stress, and fetal intolerance to labor;

f.   Failing to initiate timely and meaningful interventions and treatments;

g.   Failing to recognize that the actions of Dr. Shelton and Nurse Rasmussen, and/or other nurses and/or physicians caring for MS. Burt and her unborn child, increased the risk of harm and otherwise placed R.B. in harm's way by failing to provide a proper medical evaluation, and for not taking appropriate steps to initiate an expedited delivery in the presence of a non-reassuring fetal heart rate tracing and obvious signs of fetal intolerance to labor, all of which the physicians and/or nurses knew or should have known may lead to serious fetal brain injury or even death;

h.   Failing to invoke the chain of command and to act as a patient advocate;

i.   Failing to expedite the delivery of R.B.;

j.   Failing to timely perform a cesarean section;

k.   Failing to recognize the risks of fetal injury, including brain damage and death, in the presence of a non-reassuring fetal heart rate tracing with obvious signs of fetal intolerance to labor, and with a baby remote from vaginal delivery;

l.   Failing to communicate with the patient's other healthcare providers;

    m. Failing in other ways to manage Ms. Burt's labor in accordance with the applicable standards of care, including, but not limited to, failing to communicate and act as a patient advocate;

    n. Failing to provide relevant information and informed consent to Ms. Burt in order to allow her the opportunity to decide whether to continue with a trial of labor, when other interventions and treatments, such as expedited delivery via cesarean section, were reasonable and necessary; and

    o. Other negligent acts or omissions that may become apparent and established throughout the course of discovery.

41.    The Defendants, Winona Health, Winona Health Services, and Winona Health's Women's Health Center directly, and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Shelton, Nurse Rasmussen, and/or the physicians, and labor and delivery nursing staff caring for Ms. Burt and R.B., further failed to exercise such degree of skill and diligence required of a healthcare provider and hospital acting under the same or similar circumstances in the same or similar community, and was negligent in the following particulars, among others, as may be further determined and established through legal discovery in this action:

    a. Failing to adequately instruct, train, and/or supervise its employees;

    b. Failing to provide appropriately trained and skilled personnel to care for Ms. Burt and R.B. during labor and at the time of delivery;

    c. Failing to establish and/or enforce appropriate policies, procedures and/or protocols for the management of patients during labor, for acting

as effective patient advocates, and for providing relevant information and informed consent to patients under the same or similar circumstances as Ms. Burt and R.B.;

d.  Failing to establish and/or follow and/or enforce appropriate policies, procedures, guidelines, drills, training, and practices to properly recognize and treat non-reassuring fetal heart rate patterns, signs of fetal stress, and fetal intolerance to labor;

e.  Failing to properly credential, supervise, and/or provide adequate training to employees, including, but not limited to, Dr. Shelton, Grace Rasmussen, R.N., and/or the physicians, and labor and delivery nursing staff caring for patients under the same or similar circumstances as Ms. Burt and R.B.;

f.  Failing to enforce and/or promote and/or enforce appropriate chain of command policies, procedures, and/or practices in response to actions or inactions by any healthcare provider that may increase the risk of serious injury or death;

g.  Failing in other ways to implement and enforce policies, procedures, guidelines, drills, and training for the preparation and performance of emergency or stat cesarean sections; and

h.  Other negligent acts or omissions, which may become apparent and established throughout the course of discovery.

42.   As a direct and proximate result of the individual, successive, concurrent, joint, and several negligence of Defendants, Dr. Shelton, Nurse Rasmussen, Winona

14

Health, Winona Health Services, and/or Winona Health's Women's Health Center, directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Shelton, and Nurse Rasmussen, and other physicians, and nursing staff at Winona Health, Winona Health Services, and Winona Health's Women's Health Center, as alleged herein, the minor Plaintiff, R.B., has received, and will continue to require, substantial medical, nursing, attendant, and related care, various types of therapies, such as physical, occupational, speech, rehabilitation, psychological, and pharmaceutical, and other care, including specialized devices, equipment, transportation, education, and housing, all of which shall require the expenditure of significant sums of money. In addition, the minor Plaintiff, R.B., has further sustained a loss of income and diminished future wage earning capacity.

WHEREFORE, Plaintiffs, R.B., a minor child, by and through Jamie Burt and Mitchell Burt, her parents and natural guardians, and Jamie Burt and Mitchell Burt, individually, pray for judgment against the Defendants, Winona Health, Winona Health Services, and Winona Health's Women's Health Center, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with their costs and disbursements herein and interest allowable pursuant to Minn. Stat. § 549.09 (2012).

### COUNT II – MEDICAL NEGLIGENCE AS TO TROY SHELTON, M.D.

43.     Plaintiffs incorporate herein by reference hereto the allegations contained in paragraphs 1 through 42, as though fully set forth herein.

44.     The Defendant, Dr. Shelton, owed a duty to Plaintiff Ms. Burt and to minor Plaintiff R.B. to provide proper care and treatment and to use that degree of skill and

diligence required of a healthcare provider acting under the same or similar circumstances in the same or similar community.

45.     The Defendant, Dr. Shelton, acting individually and/or as an employee, servant, and/or actual and/or apparent agent of Defendants, Winona Health, Winona Health Services, and/or Winona Health's Women's Health Center, breached his non-delegable duty to the Plaintiffs by failing to exercise such degree of skill and diligence required of healthcare providers acting under the same or similar circumstances in the same or similar community, and he was negligent in the following particulars, among others, as may be further determined and established through legal discovery in this action:

a.   Failing to timely come to Ms. Burt's bedside upon learning of a non-reassuring fetal heart rate tracing;

b.   Failing to recognize a non-reassuring fetal heart rate tracing;

c.   Failing to recognize signs of fetal stress, and fetal intolerance to labor;

d.   Failing to initiate timely and meaningful interventions and treatments;

e.   Failing to expedite the delivery of R.B.;

f.   Failing to timely perform a cesarean section delivery;

g.   Failing to recognize the risks of fetal injury, including brain damage and death, in the presence of a non-reassuring fetal heart rate tracing with obvious signs of fetal intolerance to labor, and a baby remote from vaginal delivery;

h.   Failing to adequately instruct, train, and/or supervise the labor and delivery nurses caring for Ms. Burt and R.B.;

     i.   Failing in other ways to manage Ms. Burt's labor and delivery in accordance with the applicable standards of care, including, but not limited to failing to communicate and act as a patient advocate;

     j.   Failing to provide relevant information and informed consent to Ms. Burt in order to allow her the opportunity to decide whether to continue with a trial of labor, when other interventions and treatments, such as expedited delivery via cesarean section, were reasonable and necessary; and,

     k.   Other negligent acts or omissions that may become apparent and established throughout the course of discovery.

46.    As a direct and proximate result of the negligence of Dr. Shelton, minor Plaintiff R.B. suffered damages as more specifically described above in Count I.

WHEREFORE, Plaintiffs, R.B.,a minor child, by and through Jamie Burt and Mitchell Burt, her parents and natural guardians, and Jamie Burt and Mitchell Burt, individually, pray for judgment against the Defendant Dr. Shelton, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with their costs and disbursements herein and interest allowable pursuant to Minn. Stat. § 549.09 (2012).

**COUNT III – MEDICAL NEGLIGENCE AS TO GRACE RASMUSSEN, R.N.**

47.    Plaintiffs incorporate herein by reference hereto the allegations contained in paragraphs 1 through 46, as though fully set forth herein.

48.    The Defendant, Nurse Rasmussen, owed a duty to Plaintiff Ms. Burt and to minor Plaintiff R.B. to provide proper care and treatment and to use that degree of skill and

diligence required of a healthcare provider and nurse acting under the same or similar circumstances in the same or similar community.

49.     The Defendant, Nurse Rasmussen, acting individually and/or as an employee, servant, and/or actual and/or apparent agent of Defendants, Winona Health, Winona Health Services, and Winona Health's Women's Health Center breached her non-delegable duty to the Plaintiffs by failing to exercise such degree of skill and diligence required of healthcare providers and nurses acting under the same or similar circumstances in the same or similar community, and she was negligent in the following particulars, among others, as may be further determined and established through legal discovery in this action:

  a. Failing to recognize a non-reassuring fetal heart rate tracing;

  b. Failing to recognize signs of fetal stress, and fetal intolerance to labor;

  c. Failing to initiate timely and meaningful interventions and treatments;

  d. Failing to recognize the risks of fetal injury, including brain damage and death, in the presence of a non-reassuring fetal heart rate tracing with obvious signs of fetal intolerance to labor, and a baby remote from vaginal delivery;

  e. Failing in other ways to manage Ms. Burt's labor and delivery in accordance with the applicable standards of care, including, but not limited to failing to communicate and act as a patient advocate;

  f. Failing to timely get a physician to the bedside to evaluate Ms. Burt and her unborn child;

g.  Failing to go up her chain of command to get a physician to the bedside in the presence of non-reassuring fetal monitor tracings and obvious intolerance to labor; and

h.  Other negligent acts or omissions that may become apparent and established throughout the course of discovery.

50.  As a direct and proximate result of the negligence of Nurse Rasmussen, minor Plaintiff R.B. suffered damages as more specifically described above in Count I.

WHEREFORE, Plaintiffs, R.B., a minor child, by and through Jamie Burt and Mitchell Burt, his parents and natural guardians, and Jamie Burt and Mitchell Burt, individually, prays for judgment against the Defendant Nurse Rasmussen, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with their costs and disbursements herein and interest allowable pursuant to Minn. Stat. § 549.09 (2012).

## COUNT IV – PARENTAL CLAIMS

51.  Plaintiffs incorporate herein by reference hereto the allegations contained in paragraphs 1 through 50, as though fully set forth herein.

52.  As a further direct and proximate result of the individual, successive, concurrent, joint, and several negligence of Defendants, Dr. Shelton, Nurse Rasmussen, Winona Health, Winona Health Services, and Winona Health's Women's Health Center directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Shelton, Nurse Rasmussen, and other physicians, and nursing staff at Winona Health, Winona Health Services, and Winona Health's Women's Health Center as alleged herein, and the resulting damages to their minor daughter, R.B., Plaintiffs Jamie Burt and Mitchell Burt have incurred, and will continue to

incur in the future, expenses for the medical, surgical, nursing, therapeutic, rehabilitative and custodial care and attention for their daughter, as well as for specialized equipment, housing, education, and other needs to accommodate her medical conditions, all of which will exceed Seventy-Five Thousand Dollars ($75,000.00).

53.    As a further direct and proximate result of individual, successive, concurrent, joint, and several negligence of Defendants, Dr. Shelton, Nurse Rasmussen, Winona Health, Winona Health Services, and Winona Health's Women's Health Center, directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Shelton, Nurse Rasmussen, and other physicians, and nursing staff at Winona Health, Winona Health Services, and Winona Health's Women's Health Center, as alleged herein, and the resulting damages to their minor daughter, R.B., Plaintiffs Jamie Burt and Mitchell Burt have been deprived, and will be further deprived, of an emotional relationship with their daughter, and a loss of services, companionship, and consortium to the present and into the future, all of which will exceed Seventy-Five Thousand Dollars ($75,000.00)

WHEREFORE, Plaintiffs Jamie Burt and Mitchell Burt demand entry of judgment against Defendants, Winona Health, Winona Health Services, and Winona Health's Women's Health Center, Dr. Shelton, and Nurse Rasmussen, jointly and severally for a reasonable amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and disbursements as allowed by law.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues herein.

Dated: 4-26-16

Wilbur Fluegel (Bar# 30429 )
Fluegel Law Office
150 South Fifth Street, Suite 2525
Minneapolis, MN 55402
(612) 238-3540
wilfluegel@aol.com

AND

Dov Apfel (*pro hac vice* to be applied for)
Sharon R. Morgan (*pro hac vice* to be applied for)
Patrick Thronson (*pro hac vice* to be applied for)
Janet, Jenner & Suggs, LLC
1777 Reisterstown Rd., Ste. 165
Baltimore, Maryland 21208
(410) 653-3200

*Counsel for Plaintiffs*