UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jamie Burt and Mitchell Burt, each individually and as Parents and Natural Guardians of R.B., a minor,<br>       Plaintiffs,<br>v.<br>Winona Health, Winona Health Services, Winona Health's Women's Health Center, Troy J. Shelton, M.D., and Grace Rasmussen, R.N.,<br>       Defendants. | Civil No. 16-1085(DWF/FLN)<br><br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

---

Gerald D. Jowers, Jr., Esq., Kenneth M. Suggs, Esq., Patrick A. Thronson, Esq., and Sharon R. Morgan, Esq., Janet, Jenner & Suggs, LLC; and Wilbur W. Fluegel, Esq., Fluegel Law Office, counsel for Plaintiffs.

Bryon Glen Ascheman, Esq., Chad J. Hintz, Esq., and Richard J. Thomas, Esq., Burke & Thomas, PLLP; and Cecilie M. Loidolt, Esq., and Sarah M. Hoffman, Esq., Bassford Remele, counsel for Defendants Winona Health, Winona Health Services.

---

## INTRODUCTION

This matter is before the Court on Defendants' Motions for Partial Summary Judgment. (Doc. Nos. 66, 71). For the reasons set forth below, the Court grants in part and denies in part the motions.

## BACKGROUND

Parents of minor R.B. brought a claim against their OB/GYN (Defendant Troy J. Shelton), a prenatal nurse (Defendant Grace Rasmussen), and the hospital (Defendant

Winona Health[1]) after R.B developed cerebral palsy allegedly as a result of negligence by the defendants.  Both Nurse Rasmussen and Dr. Shelton were employees of Winona Health at the time.  Defendants have moved for summary judgment on four claims: (1) corporate negligence; (2) negligent credentialing of the nurses; (3) Nurse Rasmussen's failure to activate the chain of command or notify Dr. Shelton; and (4) negligence based on a failure to follow policies or hospital guidelines.

## DISCUSSION

### I.     Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986) (quoting Fed. R. Civ. P. 1).

---

[1]     Plaintiffs named as defendants Winona Health, Winona Health Services, and Winona Health's Women's Health Center.  According to Defendants, Winona Health Services is a non-profit corporation doing business as Winona Health, and Defendants deny that Winona Women's Health is a proper party.  (*See* Doc. No. 16 ¶ 6.)  Of the corporate defendants, only Defendant Winona Health Services d/b/a Winona Health has moved for partial summary judgment (Doc. Nos. 66 & 71), and both parties refer to only "Winona Health."  Thus, the Court will likewise refer to only "Winona Health," but has not seen any indication that the corporate defendants are distinguishable.

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Defendants have moved for summary judgment before discovery has concluded. As a general rule, "summary judgment is proper only after the nonmovant has had adequate time for discovery." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (internal quotation marks omitted). As a result, the Court can elect to defer deciding the motion until the parties have conducted adequate discovery if the nonmovant can demonstrate that "for specified reasons, [the nonmovant] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see also Toben*, 751 F.3d at 894. Specifically, "[t]he party seeking additional discovery must show: (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Toben*, 751 F.3d at 895; *accord Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016); *Marvin Lumber & Cedar Co. v. Marvin Architectural Ltd.*, Civ. No. 16-887, 2016 WL 6595902, at *3 (D. Minn. Nov. 7, 2016).

3

## II.   Corporate Negligence

Defendants move for summary judgment on Plaintiffs' claims against Winona Health for direct liability under a theory of corporate negligence.[2] In its opposition, Plaintiffs contend that Winona Health was directly liable because it negligently supervised and retained Dr. Shelton. (*See* Pls.' Opp. at 17-18.)[3]

Plaintiffs' claim for negligent supervision fails. Negligence supervision is a theory of vicarious liability and therefore cannot impose direct liability on a corporation. *See, e.g.*, *M.L. v. Magnuson*, 531 N.W.2d 849, 858 (Minn. Ct. App. 1995) ("Negligent supervision derives from the doctrine of respondeat superior."); *see also Halsne v. Avera Health*, Civ. No. 12-2409, 2014 WL 1153504, at *6 (D. Minn. Mar. 21, 2014) ("Unlike negligent hiring and negligent retention, which are based on direct liability, negligent supervision derives from the respondeat superior doctrine."). Thus, to the extent that

---

[2]   Defendants argue that hospitals cannot be held directly liable through claims of corporate negligence, such as negligent hiring or retention. Plaintiffs cite to *Larson v. Wasemiller*, 738 N.W.2d 300 (Minn. 2007), where the Minnesota Supreme Court recognized the tort of negligent credentialing. But in *Larson*, the Minnesota Supreme Court extended negligent hiring to a doctor who was an independent contractor not covered by a claim for negligent hiring. *See id.* at 304-05 & n.2. Some courts have concluded that claims of corporate negligence are not viable because there would be no need to recognize the narrower claim of negligent credentialing. *See Damgaard v. Avera Health*, 108 F. Supp. 3d 689, 696 (D. Minn. 2015). Here, the Court does not need to decide the outer limits of viable claims for corporate negligence because Minnesota law supports direct claims for negligent retention and negligent hiring. *See M.L. v. Magnuson*, 531 N.W.2d 849, 857 (Minn. Ct. App. 1995). The Court therefore concludes that *Larson* does not bar all claims of corporate negligence.

[3]   The Court cites to Defendants' Memorandum in Support of Summary Judgment as "Defs.' Memo." (Doc. No. 68); Plaintiffs' Opposition as "Pls.' Opp." (Doc. No. 72); and Defendants' Reply as "Defs.' Reply." (Doc. No. 77).

Plaintiffs seek to impose direct liability for negligent supervision, the Court grants Defendants' motions for summary judgment.

Additionally, Plaintiffs' claim for negligent retention fails. Claims for negligent retention impose direct liability against a corporation for its employee's intentional torts, but not negligent claims. *McLemore v. Holiday Stationstores, Inc.*, Civ. No. 02-4335, 2004 WL 2092012, at *6 (D. Minn. Sept. 17, 2004) ("Plaintiff also alleges a claim for negligent hiring, retention and supervision . . . . Plaintiff's claims must fail as he has failed to proffer any evidence that an intentional tort was committed against him."); *Cook v. Greyhound Lines, Inc.*, 847 F. Supp. 725, 733 (D. Minn. 1994) ("[W]e agree that the current status of Minnesota law does not recognize a claim for negligent hiring or retention that is premised solely upon an employee's negligent act."). Here, Plaintiffs do not allege any intentional torts, thus negligent retention is not a viable claim. The Court therefore grants Defendants' motions as they relate to negligent retention.

### III.  Negligent Credentialing of Nurse Rasmussen

Defendants move for summary judgment on Plaintiffs' claim for negligent credentialing of Nurse Rasmussen. Plaintiffs concede that this claim is not cognizable. (Pls.' Opp. at 37-38.) Thus, the Court grants Defendants' motions for summary judgment for this claim.

### IV.  Failure to Activate the Chain of Command

Plaintiffs allege that Nurse Rasmussen failed to timely notify Dr. Shelton of R.B's developments. (Pls.' Opp. at 12.) Defendants conceded that this claim is cognizable.

(Defs.' Reply at 13.)  Thus, the Court denies Defendants' motions for this part of Plaintiffs' claim.

Plaintiffs also allege that Nurse Rasmussen should have activated the chain of command when given negligent instructions from Dr. Shelton.  In essence, Plaintiffs contend that Nurse Rasmussen should have gone over Dr. Shelton's head.  In general, courts in Minnesota have rejected arguments that nurses are expected to ignore doctor's orders or compel doctors to undertake certain treatment.  *See Mercil v. Mathers*, 517 N.W.2d 328, 328 (Minn. 1994) (declining to impose a legal duty on nurses "to insist or even order the doctors to conduct an 'on hands' examination of the patient"); *see also Huisman ex rel. Schroeder v. Chambers*, Civ. No. A07-1955, 2008 WL 5136271, at *4 (Minn. Ct. App. Dec. 9, 2008) ("The Minnesota Supreme Court has expressly 'declined to impose a general duty on nurses to compel a physician to take additional treatment steps.'" (quoting *Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 405 (Minn. 1998))).  Plaintiffs point to *Mesedahl v. St. Luke's Hospital Association of Duluth*, 259 N.W. 819 (Minn. 1935) for the proposition that nurses can be held liable for following a doctor's obviously negligent order.  *Id.* at 822.  The Minnesota Supreme Court provided an example of such an order:  "Certainly, if a physician or surgeon should order a nurse to stick fire to a patient, no nurse would be protected from liability for damages for undertaking to carry out the orders of the physician."  *Id.*

Here, Plaintiffs do not allege any order that is akin to setting a patient on fire.  *See Huisman*, 2008 WL 5136271, at *4 ("Although [plaintiff's] expert-disclosure affidavits assert that failing to provide 'proper neonatal support,' as defined by the affidavits, was

6

obviously negligent, this omission cannot be equated to setting a patient ablaze."). Thus, the Court concludes that Plaintiffs' claim for Nurse Rasmussen's failure to activate the chain of command is not actionable. The Court therefore grants Defendants' motions for summary judgment for that claim.

## V.     Failure To Follow Hospital Policies And Procedures

Last, Defendants move for summary judgment on Plaintiffs' claims that Defendants were negligent when they failed to follow hospital policies and procedures. Minnesota provides a safe harbor, which insulates hospitals from liability for negligence for failing to follow their policies and procedures. *See* Minn. Stat. § 145.65. Under Minnesota Statute § 145.65, guidelines promulgated by a "Review Organization" are not admissible as evidence against a medical professional by the person to whom such professional services have been rendered. A hospital is not necessarily a Review Organization. *See Kalish v. Mount Sinai Hosp.*, 270 N.W.2d 783, 786 (Minn. 1978) (cited as authoritative by Defendants)[4] ("The fact that the guidelines were prepared by a protected review organization distinguishes them from the hospital rule held admissible in *Boland v. Garber, Minn.*, 257 N.W.2d 384 (1977), and the accreditation manual held admissible in *Cornfeldt v. Tongen, Minn.*, 262 N.W.2d 684 (1977)."); *see also DeYoe v. N. Mem'l Health Care*, Civ. No. 99-1837, 2000 WL 1051964, at *4 (Minn. Ct. App. Aug. 1, 2000) ("We conclude that North Memorial's protocols regarding Pitocin use were established by a peer review organization within the meaning of Minnesota Statute § 145.65, because the guidelines were prepared by a committee of health care

---

[4]     The definition of "Review Organization" was amended in 1991.

professionals for the purpose of providing a guide for the use of Pitocin in the induction of labor.").

Here, Defendants submitted with their reply brief a declaration from Robin Hoeg, Vice President of Inpatient & Senior Services for Winona Health. (Doc. No. 80.) Hoeg declared that Winona Health's policies and procedures are promulgated by Review Organizations in compliance with Minnesota Statute § 145.65. (*See id.*) At argument, Plaintiffs stated that additional discovery is needed to confirm that Winona Health complied with § 145.65. Plaintiffs conceded that if a Review Organization promulgated the policies, then summary judgment is appropriate. Given that discovery has not closed and Plaintiffs have been unable to confirm that Winona Health promulgated its policies and procedures in compliance with § 145.65, the Court declines to grant Defendants' motions for summary judgment. But the Court notes that it appears that Defendants will ultimately succeed in dismissing this claim and encourages Plaintiffs to agree to dismiss this claim if discovery confirms Hoeg's declaration.

### ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions for Summary Judgment (Doc. Nos. [66, 71]) are **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Plaintiffs' claims against Winona Health for direct liability for negligent supervision and negligent retention are **DISMISSED WITH PREJUDICE**.

    b.  Plaintiffs' claim for negligent credentialing of Nurse Rasmussen is **DISMISSED WITH PREJUDICE**.

    c.  Plaintiffs' claim for Nurse Rasmussen's failure to activate the chain of command is **DISMISSED WITH PREJUDICE**.

    d.  The remainder of Defendants' motions is **DENIED**.

Dated:  February 28, 2018     s/Donovan W. Frank  
                DONOVAN W. FRANK  
                United States District Judge