# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jamie Burt and Mitchell Burt, each individually and as Parents and Natural Guardians of R.B., a minor,<br><br>                Plaintiffs,<br><br>v.<br><br>Winona Health; Winona Health Services; Winona Health's Women's Health Center; Troy J. Shelton, M.D.; and Grace Rasmussen, R.N.,<br><br>                Defendants. | Civil No. 16-1085 (DWF/FLN)<br><br><br><br>**ORDER** |

This matter is before the Court upon Defendants Winona Health Services, d/b/a Winona Health's, and Grace Rasmussen, R.N.'s appeal (Doc. No. 96) of Magistrate Judge Franklin L. Noel's February 23, 2018 Order (Doc. No. 91) and Defendants Troy J. Shelton, M.D.'s and Winona Health Services d/b/a Winona Health's appeal (Doc. No. 97) of Magistrate Judge Franklin L. Noel's February 23, 2018 Order (Doc. No. 91). Plaintiffs filed an opposition to Defendants' appeal on March 23, 2018. (Doc. No. 102.) Defendants Winona Health Services and Grace Rasmussen, R.N. filed a brief in support of its objection to the Magistrate Judge's Order denying whole exome sequencing ("WES") testing on April 4, 2018. (Doc. No. 105.) Defendants Troy J. Shelton, M.D. and Winona Health Services filed a reply brief in support of its objection to the Magistrate Judge's Order denying WES testing on April 4, 2018. (Doc. No. 106.)

The Court must modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Local Rule 72.2(a). This is an "extremely deferential standard." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). The factual background for the above-entitled matter is clearly and precisely set forth in Magistrate Judge Noel's Order and is incorporated by reference.

In his Order, Magistrate Judge Noel granted in part and denied in part Defendants' request for discovery and fees.[1] As relevant here, Defendants requested that the Court order Plaintiffs to undergo WES testing to explore other possible genetic causes of R.B.'s disability. The Magistrate Judge denied Defendants' request, concluding that Defendants failed to show the requisite good cause under Fed. R. Civ. P. 35(a)(2)(A). The Magistrate Judge found persuasive the Rule 35 reasoning of *Fisher for X.S.F. v. Winding Waters, Clinic, P.C., et al.*, which appears to be the first federal district court case to consider Rule 35 in the context of a request to compel WES testing. Civ. No. 2:15-01957, 2017

---

[1] The Magistrate Judge also denied in part and granted in part Defendants' two other requests, (1) ordering that Plaintiffs produce Jamie Burt's mental health and pharmacy records for the one year leading up to R.B.'s birth, and (2) denying Defendants' request that Plaintiffs pay reimbursement fees for "the expenses Defendants incurred for their out-of-state experts to travel to Wisconsin for an [independent medical exam] that Plaintiffs cancelled minutes before it was scheduled to start." (*See* Doc. No. 91 at 4, 7.) Defendants do not appeal those decisions.

WL 574383, at *3 (D. Or. Feb. 13, 2017). In *Fisher*, the Court noted that WES testing frequently requires testing of an examinee's relatives "to determine whether a particular [DNA sequence] variant has caused a potential genetic syndrome." *Id.* at *7. Such testing oftentimes has the consequence of disclosing genetic information of an examinee's relatives – individuals who are not parties to the case and may have no interest in its outcome. *See id.* The Court concluded that "[t]his sweeping invasion of personal integrity and privacy strongly weighs against a finding of good cause." *Id.* Persuaded by *Fisher*'s "Rule 35 exposition," the Magistrate Judge concluded "that Plaintiffs could carry genetic disorders contributing to R.B.'s disability is insufficient to show good cause that those putative genetic disorders are in controversy in this case." (Doc. No. 91 at 6.) The Magistrate Judge found that Defendants failed to show the requisite good cause under Rule 35 and denied Defendants' request. (*Id.* at 7.)

Defendants appeal the Magistrate Judge's Order, arguing that the Magistrate Judge erred in concluding that the Rule 35 "good cause" standard requires Defendants to show "specific facts justifying discovery." (Doc. No. 96 at 10.) Defendants contend that their experts have identified genetic disorders and "specific conditions that could be likely culprits" of R.B.'s disability. Defendants argue that by requiring more specific facts, the Magistrate Judge inappropriately burdened Defendants with proving their case on the merits at this stage of the litigation. (*Id.*) In support of their position, Defendants rely on *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). In *Schlagenhauf*, the United States Supreme Court reversed the district court's order granting several physical and mental examinations pursuant to a Rule 35 request. *Id.* at 108-09. The Supreme Court held that

3

a party requesting an examination pursuant to Rule 35 must show "that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* The Supreme Court further noted that Rule 35 examinations should not be "ordered routinely" and that "there must be a greater showing of need under [Rule 35] than under the other discovery rules." *Id.* at 118, 122. Defendants contend that they have met this burden.

Plaintiffs ask the Court to affirm the Magistrate Judge's conclusion that good cause does not exist for WES testing. (*See generally* Doc. No. 102.) Specifically, Plaintiffs argue that Defendants have failed to "establish that R.B.'s genome is in controversy, or good cause exists . . . to support dragnet genetic testing." (*Id.* at 9.) Plaintiffs further assert that "Defendants have already received what they are entitled to under Rule 35" and *Schlagenhauf* because "Plaintiffs submitted to an examination of R.B. voluntarily by Defendants' pediatric neurologist." (*Id.* at 14 (noting that *Schlagenhauf* permits a defendant an examination to determine the existence and extent of the injury a plaintiff asserts") (internal quotation marks and citation omitted).)

The Court observes that this is an extremely close call. The Court concludes, however, that because Plaintiffs must prove the cause of R.B.'s injuries, R.B.'s genetic makeup is "really and genuinely in controversy." *Schlagenhauf*, 379 U.S. at 109. The Court further concludes that Defendants have established good cause for WES testing. Specifically, Defendants' expert, Dr. Bradley Schaefer, stated that there are numerous genetic disorders that may have caused R.B.'s injuries, while also identifying specific conditions that may be a cause. (Doc. No. 45 ("Schaefer Decl.") ¶ 6.) Dr. Schaefer also

explained that "[w]ithout genetic testing to look for these conditions," doctors often misdiagnose a child's injuries. (*Id.*) These facts undercut the Magistrate Judge's finding that Defendants did not "identify[] what other causes are likely to be found or why [WES] testing is likely to produce evidence that cannot be ascertained without the testing." (Doc. No. 91 at 6.) Dr. Schaefer identified specific facts justifying WES testing related to R.B.'s parents – namely, that their "medical records indicate the possibility of underlying genetic issues within the family." [2] (*Id.* ¶ 5.)

Plaintiffs' privacy and personal, physical integrity concerns are valid. However, the Court finds that the stipulated protective order in this case is adequate to protect Plaintiffs' private genetic information from disclosure to third parties. (*See* Doc. No. 28.) The stipulated protective order also permits the parties to petition the Court for modification of the protective order, which Plaintiffs may do to more comprehensively protect their genetic information. (*Id.* ¶ 12.) Moreover, the physical testing sought here involves collecting only a teaspoon of blood from each Plaintiff. (Schaefer Decl. ¶ 9.) The test is minimally invasive compared to other Rule 35 examinations, including, as

---

[2] Defendants submitted a Supplemental Objection to Magistrate's Order Denying Whole Exome Sequencing ("Supplemental Objection") and provided the Court with excerpts from four expert depositions, including Dr. Schaefer's, that Defendants say support their appeal. (Doc. No. 115.) Plaintiffs urge the Court to disregard the Supplemental Objection, arguing that it is inappropriate to consider evidence that was not part of the record that the Magistrate Judge considered. Defendants reply that there is no caselaw prohibiting a court from considering supplemental evidence where, as here, the matter is before the Court on a non-dispositive motion. (Doc. No. 119.) The Court does not need to resolve this dispute. The Court reaches its conclusion without considering the supplemental evidence. However, the Court also notes that the expert testimony further entrenches R.B.'s genetic makeup into the parties' dispute over causation. Indeed, Plaintiffs' experts acknowledge that genetic disorders may have caused R.B.'s injuries. (Doc. No. 116-1 at 3-4, 9-10, 17-19.)

relevant here, spinal taps.[3] The relevance of Plaintiffs' genetic makeups outweigh Plaintiffs' physical and privacy concerns relating to WES testing.

Plaintiffs also ask the Court to affirm the Magistrate Judge's order on the alternative grounds that Minnesota's Genetic Privacy Act (the "Genetic Privacy Act") bars WES testing. *See* Minn. Stat. § 13.386. The Genetic Privacy Act states:

> (a) Unless otherwise expressly provided by law, genetic information about an individual:
> (1) may be collected by a government entity, as defined section 13.02, subdivision 7a, or any other person only with the written informed consent of the individual;
> (2) may be used only for purposes to which the individual has given written informed consent;
> (3) may be stored only for a period of time to which the individual has given written informed consent; and
> (4) may be disseminated only:
> (i) with the individual's written informed consent; or
> (ii) if necessary in order to accomplish purposes described by clause (2).

Minn. Stat. § 13.386. Plaintiffs argue that the Genetic Privacy Act grants Plaintiffs a privilege in their genetic information and that Rule 35 is not an exception to the statute. However, the language of Rule 35 plainly permits courts to order parties to undergo "a physical or mental examination" and does not identify any types of examinations that are exempt from the rule. Genetic testing, including WES, is therefore within the array of examinations that Rule 35 envisions. The Court concludes that Rule 35 and Defendants' constitutional right to a jury trial provide legal bases for the Court to order WES testing.

---

[3] With this order, the Court grants Defendants' request that Plaintiffs undergo *WES testing*, which Dr. Schaefer describes as a "second level [genetic] test." (Doc. No. 116-1 at 29.) The Court does not undertake any Rule 35 analysis regarding what Dr. Schaefer describes as a "third tier of testing," i.e., "things that are more invasive like spinal taps and those sorts of things." (*Id.*)

Although immaterial to the ruling, the Court notes that aspects of this outcome may best serve the interests of all parties. Had the Court denied Defendants' request, the parties and Court surely would have faced significant pretrial evidentiary issues, including *Daubert* motions, concerning the experts' competing causation opinions and the effect of Plaintiffs not completing WES testing. In the end, by undergoing WES testing, Plaintiffs may bolster their claim that Defendants' mismanagement of labor caused R.B.'s injury.

Here, the Court is left with a "definite and firm conviction that a mistake has been committed" concerning the Magistrate Judge's good-cause findings. Although this is a close call, the Court finds that Magistrate Judge Noel's Order is clearly erroneous. The Court therefore grants Defendants Winona Health Services, d/b/a Winona Health's and Grace Rasmussen, R.N.'s appeal and Defendants Troy J. Shelton, M.D.'s and Winona Health Services d/b/a Winona Health's appeal and reverses Magistrate Judge Noel's February 23, 2018 Order insofar as it denies Defendants' request that Plaintiffs undergo WES testing. The Court's order does not have any effect on the Magistrate Judge's denial of Defendants' requests for Plaintiffs' mental health/pharmacy records and reimbursement of expenses.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants Winona Health Services, d/b/a Winona Health's and Grace Rasmussen, R.N.'s appeal (Doc. No. [96]) of Magistrate Judge Franklin L. Noel's February 23, 2018 Order is **GRANTED**.

7

2.	Defendants Troy J. Shelton, M.D.'s and Winona Health Services d/b/a Winona Health's appeal (Doc. No. [97]) of Magistrate Judge Franklin L. Noel's February 23, 2018 Order is **GRANTED**.

3.	Magistrate Judge Franklin L. Noel's February 23, 2018 Order (Doc. No. [91]) is **REVERSED IN PART** insofar as it denied Defendants' request that Plaintiffs undergo WES testing.

Dated:  August 1, 2018		s/Donovan W. Frank
					DONOVAN W. FRANK
					United States District Judge